EXHIBIT 4

Jean-Jacques Perrey et. al. v. Televisa, S.A. de C.V., et. al.

Case No.  CV-09-6508 FMC (Rzx)

Log of Documents Subject to Privilege and Work Product Claims

Communications Between Joseph L. Golden, Esq. and Universal Polygram International Publishing, Inc

Identification of Persons Involved in Communications:

| | |
|---|---|
| Golden, Joseph L.: | Plaintiffs' counsel |
| Breuer, Robert: | A plaintiff |
| Leroy, Patricia: | The daughter and business manager of plaintiff Jean-Jacques Perrey |
| Allen, Robert (Esq.): | Senior Vice President, Business Affairs, Universal Music Publishing Group |
| Arrow, Ed: | Vice President, Copyright, Universal Music Publishing Group |
| Bauman, Scott (Esq.): | Vice President and Litigation Counsel, Universal Music Publishing Group |
| Castle, Penny: | Copyright Manager, Universal Music Publishing Group |
| Saragueta, Anthony: | Vice President of Royalties, Universal Music Publishing Group |
| Scott, James: | Film, Television and Synch Licensing Department, Universal Music Publishing Group |

Documents

| Doc. No. | Description | Author(s) | Addressee(s) | Subject of Document | Privilege Claimed* |
|---|---|---|---|---|---|
| 1 | 6/27/08 Email and attached letter | Joseph Golden | Ed Arrow cc: Patricia Leroy | Golden's representation and Client's position re claims | W/P |
| 2 | 9/24/08 Email | Penny Castle | Joseph Golden cc: Robert Breuer | Nature of plaintiffs' claims | Last sentence of first paragraph-A/C |

1

Exhibit 4, Page 34

| 3 | Handwritten notes | Joseph Golden | | Conversation with P. Castle | W/P |
|---|---|---|---|---|---|
| 4(a) | 5/26/09 email (10:41 am)** | Joseph Golden | Ed Arrow | Request for information | W/P |
| 4(b) | 5/26/09 email (12:44 pm) | Ed Arrow | Joseph Golden cc: Anthony Saragueta Scott Bauman James Scott | Response to earlier email | W/P |
| 4(c) | 5/26/09 email | Scott Bauman, Esq. | Joseph Golden | Plaintiffs' claims | W/P |
| 4(d) | 6/4/09 email | Joseph Golden | Scott Bauman Robert Allen | Follow up on 5/28/09 telephone conference and prior emails | W/P |
| 5 | 5/28/09 handwritten notes | Joseph Golden | | Telephone conference with Scott Bauman and prior emails | W/P |
| 6(a) | 6/19/09 email | Joseph Golden | Scott Bauman Robert Allen | Follow up on telephone conference and prior emails, stating plaintiffs' positions | W/P |
| 6(b) | 6/24/09 email | Scott Bauman | Joseph Golden | Response to 6/19/09 email | W/P |
| 6(c) | 7/1/09 email | Joseph Golden | Scott Bauman | Follow up on telephone conference and prior emails | W/P |

Exhibit 4, Page 35

| | | | | |
|---|---|---|---|---|
| 6(d) | 7/2/09 email | Scott Bauman | Joseph Golden | Follow up on prior emails stating plaintiffs' positions | W/P |
| 7(a) | Same as Document No. 6(a) | | | | |
| 7(b) | Same as Document 6(b) | | | | |
| 7(c) | 6/24/09 email | Joseph Golden | Scott Bauman | Response to Bauman's 6/24/09 email [Doc. Nos. 6(b) and 7(b)] and statement of plaintiffs' positions | W/P |
| 8 | Handwritten notes | Joseph Golden | | Telephone call with Scott Bauman | W/P |
| 9(a) | 7/14/09 email | Joseph Golden | Scott Bauman | Discussion of possible defenses and request for information | W/P |
| 9(b) | 7/20/09 email | Joseph Golden | Scott Bauman | Follow up on 7/14/09 email [Doc. No. 9(a)] | W/P |
| 9(c) | 7/21/09 email | Scott Bauman | Joseph Golden | Response to 7/14/09 email [Doc. No. 9(a)] | W/P |
| 9(d) | 7/21/09 email (4:11 pm) | Joseph Golden | Scott Bauman | Response to previous email and possible joint strategy | W/P |
| 9(e) | 7/21/09 email | Scott Bauman | Joseph Golden | Response to Doc. No. 9(d) | W/P |

3

| | | | | |
|---|---|---|---|---|
| 9(f) | 7/22/09 email (8:29 am) | Joseph Golden | Scott Bauman | Response to Doc. No. 9(e) | W/P |
| 9(g) | 7/22/09 email (9:50 am) | Scott Bauman | Joseph Golden | Response to Doc. No. 9(f) | W/P |
| 10 | 7/27/09 email and attached memorandum | Joseph Golden | Scott Bauman | Response to Doc. No. 9(g) and statement of plaintiffs' positions | W/P |
| 11(a) | 8/3/09 email | Joseph Golden | Scott Bauman | Request for information | W/P |
| 11(b) | 8/11/09 email (6:52 am) | Joseph Golden | Scott Bauman | Follow up on Doc. No. 11(a) | W/P |
| 11(c) | 8/11/09 email (4:06 pm) | Scott Bauman | Joseph Golden | Response to Doc. No. 11(b) | W/P |

\*    A/C:   Attorney Client Privilege
     W/P:   Attorney Work Product

\*\*   The individual emails in a string are lettered in sequence, starting with the first email on the last page of the document

4

EXHIBIT 5

7.

# VANGUARD

**RECORDING SOCIETY INC.**   71 WEST 23RD STREET | NEW YORK, N.Y. 10010

THE BACH GUILD

(212) 255-7732

New York, N. Y.
22nd day of March
in the year of 1968

Mr. Jean Jacques Perrey
c/o M. Leroy
3 Rue De Meharicourt—
Rosieres en – Santerre
80 Somme, France

Dear Mr. Perrey:

This letter sets forth the agreement between us for the render-
ing of your personal services for recording and making phono-
graph records.

1 – We hereby agree to employ your personal services as a
recording artist for the purpose of making phonograph records
and you hereby agree to record solely and exclusively for us
according to the terms and provisions of this agreement.

2. Recordings shall be made at recording sessions at/times
and in studios designated by us. A minimum of 12-45 rpm or
78 rpm   phonograph record sides shall be recorded during
the initial term of this agreement, and additional recordings
shall be made at our election. In the event that more than
the minimum number of sides are recorded during any one year
in which this agreement is in effect, we shall have the option
of applying the excess sides recorded in any one (1) year
towards the requirements for any other year or years that this
agreement has been or will be in effect. The musical compos-
itions to be recorded shall be subject to our approval as
mutually agreeable.

DE :Leroy et Hutter          N° FAX :+41 21 320 54 04          30 MAI  2008 23:33     P1

8.

satisfactory for manufacture and sale. We shall .ve the right to call upon you to repeat any work until a satisfactory master recording has been made. You will record additional sides for us under this agreement as requested by us during the term hereof. /We reserve the right to specify the music to be composed the method and manner of recording, your accompaniment (instrumental and vocal), arrangements and copying in respect of recordings made hereunder, and we shall pay the cost of such accompaniment as well as the cost of such arrangements and copying and instrumental rental which are specifically undertaken in respect of such recordings along with studio and editing costs, and all such costs so paid by us shall constitute payments to be deducted from royalties due to you under this or any other agreement between you and us if and when earned.

3 – We will pay you as compensation for your services a royalty of five (5%) percent of ninety (90%) percent of the retail list price, less Federal Excise Tax, if

e shall
utually
pecify the com-
...sitions but

INITIAL HERE


Exhibit 5, Page 40

DE 'Leroy et Hutter     N° FAX :+41 21 320 54 04     30 MAI 2008 23:34   P2

9.

-2-

only with
your prior
approval

any, and the retail cost of album covers, jackets, boxes or any
other type of package or container of the net amount of all
records sold embodying performances hereunder on both sides
thereof, and one-half (½) thereof for records embodying per-
formances on one (1) side thereof, and, in the event long play
records are sold embodying performances hereunder, which per-
formances are less than the entire contents of said long play
record, then the royalty due hereunder shall be in the same
proportion as the performance hereunder bears to the entire
content of said record. The royalty due on account of the sale
of any record produced hereunder shall be at the rate of the
royalty in effect at the time of the recording session for said
record. In the event that any recordings made hereunder are
participated in by any other Artists who are then under con-
tract to us, the royalties and non-returnable payments due
hereunder for said recordings, shall be the royalties and
non-returnable payments above provided for, divided by the
number of Artists participating therein, including yourself;
No royalties shall be due hereunder on account of the sale by
us of any records embodying performances hereunder in the event
of sale thereof by us at a price equal to or less than our cost
thereof. In the event of sales of 12" long play records embody-
ing performances hereof at a suggested list price of $2.00 or
less, royalty due hereunder shall not exceed two per cent (2%)
of ninety (90%) percent. In the event of the sale by us of
records embodying performances hereunder, at less than the
usual list price, as a result of a promotional or discount
plan, royalties due hereunder shall be reduced in the same
proportion as the reduction in the sales price as a result of
said plan, except that no royalties shall be due hereunder on
account of any records distributed to any one as a result of
participating in the plan, and/or as a result of the purchase
of a required number of records including, without limiting the
generality of the foregoing, records distributed as "bonus"

10.

and/or "free" records. On record ........ ........ fifty-five (55%) percent states, or at discounts greater th... off list price, we may at our election base the royalty per- centages on our actual selling price, F.O.B., New York.

4- For your services, we will make a non-returnable payment to you of Union Scale, subject to paragraph 25 hereof, within fourteen (14) days following the satisfactory completion of the necessary recording sessions, and such payments shall be charged against your cumulative royalties and other payments hereunder if and when earned. We will render an accounting to you within sixty (60) days after June 30th and December 31st of each year during which recordings made hereunder are sold. For all records sold under a guaranteed return basis, accounting and payment of royalties therefor may be made during the accounting period next after the accounting period in which same would ordinarily be due. Any and all payments paid by us for your services or in connection with the recordings produced hereunder made through or to the AF of M; A.G.V.A., AFTRA etc. shall be a credit against and deducted from the non-returnable payment hereunder and any and all royalties due you hereunder when earned. All royalty statements and all other accounts rendered by us to you shall be binding upon you and not subject to any objection by you for any reason unless specific objection in writing, stating the basis thereof, is given to us within one (1) year from the date rendered. *

* You shall have the right to audit our books and records upon reasonable notice and during reasonable business hours provided that no such audit may occur more than once each year and only within the time during which you may object to any royalty statement.

11.

-3-

5. - We shall have the right to give, license, lease or sell to any person, firm or company, matrices, stampers or master recordings from which records reproducing all or any of your services hereunder may be manufactured or sold, and we shall have the right to grant permission to any such person, firm or company to use such matrices, stampers or master recordings to manufacture and sell records therefrom provided only that all such transactions shall be at arms length.  In the event that we exercise the above rights in connection with any company, foreign or domestic, your payment hereunder, in lieu of the royalty outlined in paragraph 3 above shall be 33-1/3% (…) percent of the net royalties received by us.  Monies received by us from third parties due the AF of M Special Payment Fund shall not be considered as royalties received.  Payments to you of royalties or fees as aforesaid earned outside of the United States are to be paid only when such royalties or fees are received in the United States by us, and in the dollar equivalent at the rate of exchange at the time we receive payment.  In the event that any payments due from abroad are not convertible into United States dollars or you elect to receive

same in forei. currency, we shall pay you upon your request
your share or any part thereof as requested by you, in kind,
but if you do accept any such foreign currencies towards the
payment of your share as above, we shall be released pro tanto
for such payment.

6 – It is agreed that your services are unique and extraordinary.
Therefore, you agree that during the term of this contract, you
will not perform any material for any person other than us for
reproduction of any kind of your performances or any part thereof
and that for five (5) years after the expiration date of this
contract, or any extension or renewal thereof, or any new con-
tract subsequently entered into between the parties hereto,
you will not perform any material recorded hereunder for any
person, other than us for the purpose of making phonograph re-
cords or any reproductions of any kind of the performances
by any method now or hereafter known.  During the term of this
agreement you shall not endorse or authorize your name or like-
ness to be used in connection with the advertising or selling
of products in the same category as those which may be manu-
factured and/or sold by us, our licensees or affiliates,
hereunder. *

7 – All masters recorded hereunder and all matrices and phono-
graph records manufactured therefrom, together with the
performances embodied therein, shall be entirely our property,
free of any claims whatsoever by you or any person deriving any
rights or interests from you. Without limiting the generality
of the foregoing, we and/or our subsidiaries, affiliates and
licensees shall have the right to make records or other repro-
ductions of the performances embodied in such recordings by
any methods now or hereafter known, and to sell, transfer or
otherwise deal in the same under any trademarks, tradenames or
labels designated by us.

8 – We shall have the right to use and to allow others to use
your name and likeness, and biographical material concerning
you, for advertising and purposes of trade, and otherwise

VANGUARD RECORDING SOCIETY INC., 71 WEST 2nd STREET, NEW YORK, N.Y. 10010  (212) 255-7732  THE BACH GUILD

except for
royalties
due you
hereunder



13.

-4-

without restriction, in connection with the phonograph records made hereunder. We shall not use or authorize any direct endorsement by you of any record or performance or commercial product without your prior written consent.

9 - The word "person" in this contract means and includes any individual, partnership, firm, association or organization, whether incorporated or operating for profit, or legal success- ors or representatives of the foregoing. This contract cannot be changed or modified orally. We may at our election assign this agreement or any of our rights hereunder, subject to your prior written approval, not to be unreasonably withheld.

10 - In any disputes touching upon this agreement the laws of the State of New York shall govern.

11 - In the event you, by illness or absence or any other cause, are not able to fulfill the provisions herein to the reasonable satisfaction of us, we shall have the option to terminate this agreement forthwith. Further, if the fulfilling of this agree- ment shall become impossible by reason of "force majeure" or any other cause outside the control of the parties hereto, then either party shall be entitled (by giving notice in writ- ing to the other party hereto and without incurring any lia- bility for damages or compensation) to suspend the operation of this agreement until such time as such fulfillment shall again become possible provided always that if the operation of the agreement shall be suspended as aforesaid, then we shall during the period of such suspension continue to pay to you the royalties due to you under this agreement so long as any such royalties shall be payable by reason of the manufacture and sale of records under the provisions of this agreement. In the event that this agreement has become suspended, as provided for in this paragraph, the term of this agreement shall be extended for a period equivalent to the period of said suspension, providing that fulfillment of said agreement again becomes possible. For the purpose of computing the time wherein the suspension period begins, it is agreed that regardless of when notice of suspension is given, the suspen- sion period shall be determined as beginning on the date that the last recording was made under this agreement or on the first day of this agreement if no recordings have been made and ending on the date when you complete the first satisfactory

Exhibit 5, Page 45

14.

further agree that in the event that this agreement shall be-
come suspended, in accordance with the provisions of this
paragraph, that you will not, during the period that said
contract may be so suspended, record for any other person, firm
or corporation for the purpose of making phonograph records.
No payments shall be made by us to you during any period that
this agreement may become suspended, except if same is sus-
pended due to our fault, in accordance with the provisions of
this agreement. If you fail to perform any or all conditions
or covenants herein contained on your part to be performed,
whether said failure be due to your illness, refusal or any
other cause, except due to fault on the part of us, the term
of this agreement shall be extended for a period equivalent
to the period that you fail to perform, said period to be com-
puted as above set forth.

VANGUARD RECORDING SOCIETY INC., 71 WEST 23rd STREET, NEW YORK, N.Y. 10010  (212) 255-7732  THE BACH GUILD



"VANGUARD acknowledges that this agreement in no way prohibits
your composing or arranging for third parties nor does this
agreement pertain to your services as a performing artist such
as in motion pictures and Broadway shows on Television or
radio or for commercials. It is understood, however, that no
phonograph records, or the like, may be made embodying any of
your performances for any party other than VANGUARD and that any
performance of yours in a motion picture, television, or
Broadway show or any other media may not be embodied upon a
sound track album of same or in any other manner.  VANGUARD
further agrees that you shall be free to appear as a side man
for any other person, firm or corporation in connection with
the making of phonograph records, but only on the express con-
dition that your name and likeness is not used in any manner on
said recording or in connection with the promotion or adver-
tising of said recording, including but not limited to, any
album cover, jacket or liner notes."



Exhibit 5, Page 46

15.

-5-

12 - You warrant and represent that no prior contract or agreement of any kind entered into by you, or any prior performance by you, and more particularly your right to record any and all compositions recorded hereunder, will interfere in any manner with complete performance of this agreement by both parties hereto. You agree to and do hereby indemnify, save and hold us harmless from loss or damage (including attorneys' fees) arising out of or connected with any claim by a third party which is inconsistent with any of the warranties or representations made by you in this agreement. You will reimburse us on demand for any payment made by us at any time after the date hereof in respect of any liability or claim to which the foregoing indemnity relates.

13 - [illegible — text struck through / overtyped and not readable]

14 - For purposes of this agreement, "records", "phonograph records", and "recordings" include all forms of recordings and reproductions manufactured or sold primarily for use as home entertainment including, without limiting the generality of the

DE :Leroy et Hutter          N° FAX :+41 21 320 54 04          30 MAI  2008 23:40   P2

16.

foregoing, magnetic recording tape and any othe    dium for
reproduction of artistic performances for home entertainment
now known or which may hereafter become known and including, if
it becomes practical, the use of sight with sound for home use.

15 - If applicable, the standard provisions, laws, rules, by-
laws and policies of any American Federation of Musicians
agreement are incorporated herein by reference and hereby deem-
ed to be part of this agreement and shall be the exclusive
provisions of any labor agreement relating to this contract,
and any pension or welfare payments made thereunder pursuant to
any labor agreement.

A - This contract shall not become effective unless
and until it shall be approved by the International
Executive Board of the American Federation of
Musicians or by a duly authorized agent thereof.

VANGUARD RECORDING SOCIETY INC., 71 WEST 23rd STREET, NEW YORK, N.Y. 10010  (212) 255-7722  THE BACH GUILD



INITIAL HERE
J. L. C.

DE :Leroy et Hutter          N° FAX :+41 21 320 54 04          30 MAI  2008 23:40     P3

16 - You grant us the right, ~~in~~ to use one (1) of your performances in a low-price "sampler" record without payment of royalties.

   During the term hereof,

17 - Whenever and wherever you shall appear in a public perform-
ance such as concert, radio, television, motion pictures or
the like, the announcement, advertising and promotional material
for such performance shall contain the note that you are a
"Vanguard Recording Artist", or "Records Exclusively for
Vanguard Records", or some such similar indication, provided
that if, by reason of contract difficulties or otherwise, it
shall be impossible or impractical for you to secure such notice,
your failure to do so shall not be considered a breach of this
contract.

18 - The services to be performed by the Artist herein means
the performance by Artist of literary or musical works under
any method now or hereafter known whereby the performance of the
Artist is reproduced. Performance hereunder includes singing,
speaking, or playing an instrument, alone or with others. Ref-
erence to "you" means the party or parties hereby contracting
with us, whether male or female, singular or plural. All terms
and conditions herein contained on the part of you to be
performed shall be binding upon each signatory hereto, both
individually and as a member of any performing group. Without
limiting the generality of the foregoing, each signatory
hereto, if there be more than one, does hereby individually
and jointly agree that he or she will not, either individually,
or as a member of any group, perform any material for any per-
son other than us for reproduction of any kind of your perform-
ances or any part thereof, during the term hereof.

19 - If we do not record the agreed minimum number of sides,
our liability shall be limited to the agreed non-returnable
payment for all unrecorded sides, and providing that we have
paid the non-returnable payment to you for all unrecorded
sides, this contract shall remain in full force and effect
and you shall not have the right to terminate same on account
~~of the failure of us to record the agreed minimum number of~~
sides. Sides recorded hereunder in conjunction with other

-6-

18.

Artists under contract to us shall be counted t̲    as the min-
imum number of sides to be recorded hereunder.

20 – In the event of any purported breach of this agreement by
Vanguard, Artist shall give written notice to Vanguard by
certified or registered mail of said breach and Vanguard shall
have sixty (60) days within which to cure said breach.

21 – The term of this agreement shall be for 1 years commencing
on April 15,1968.  You grant us three   further options to
extend the term of this agreement for additional periods of.
one (1) year each upon all the terms and conditions herein con-
tained.  Any options to extend the term of this agreement may
be exercised by us by giving you notice in writing at least

VANGUARD RECORDING SOCIETY INC., 71 WEST 23rd STRET, NEW YORK, N.Y. 10010 (212) 255-7732  THE BACH GUILD



19.

-7-

thirty (30) days prior to the expiration of such term. Such notice to you may be given by delivery to you personally or by mailing to you at your last address known to us.

22 - Anything to the contrary notwithstanding, it is agreed that all musical compositions recorded hereunder shall be original compositions written, in whole or in part by you, and you do further agree to cause 100% of the world-wide copyright thereof to be fully assigned to Pennario Music Publishers, Inc., or to any other company we designate, and that you & any shall simultaneously, upon recording each musical composition, execute a songwriter's agreement as is set forth in Exhibit "A" attached hereto and made a part hereof. Your failure to sign said songwriter's agreement shall not divest us with any ownership in and to the world-wide copyright. We agree to sub-license the copyrights hereunder for France to Marc Fontenoy, RCA, Paris, France, on mutually agreeable terms and conditions.

23 - The royalties set forth in paragraphs 3 and 5 hereinabove are/intended to and shall/include xtl royalties which may be due to you for copyright royalties (the so-called mechanical reproduction royalty) accruing from the sale of the record- ings hereunder/ You will collect performance monies due you as a result of air play of the compositions to be recorded hereunder directly from the performance society to which you belong.

Unless VANGUARD agrees to the contrary 24 -/You will furnish us with original compositions ~~fully~~ ~~arranged by you~~/~~yes~~/for the recordings to be made hereunder.

25 - It is agreed that VANGUARD shall not exercise its option to extend the current agreement between you and us dated March 1, 1966. However, it is agreed that there shall be com- plete cross-collateralization between the royalties due you under the aforesaid March 1, 1966 agreement and this agreement being entered into between the parties hereto. Any unrecouped advances under the March 1, 1966 agreement may be applied against royalties due under this agreement.

26 - The parties acknowledge that the artist is in the process of completing sufficient phonograph record sides for a long play album. It is agreed that therefore it will

but no mech- anical roy- alties shall be due you until your royalty ac- count is in a positive earning posi- tion.

[not]

J.L.P.

DE :Leroy et Hutter                    N° FAX :+41 21 320 54 04              30 MAI  2008 23:42    P6

20.-



a non-returnable advance against union scale pay.  .ts and
royalties due hereunder the sum of $1500.00 per long play album
recorded hereunder, except that we shall deduct from said
$1500.00 any union scale payments heretofore made with respect
to the present album now being recorded. It is further agreed
that the album now being recorded shall be deemed to have
been recorded pursuant to the terms of this agreement and
the phonograph record sides shall be applied against the min-
imum number of phonograph record sides to be recorded during
the initial term of this agreement as provided for in para-
graph 2 hereinabove.

Sincerely,
VANGUARD RECORDING SOCIETY, INC.

BY:

AGREED AND ACCEPTED TO:

JEAN JACQUES PERREY

21.

AGREEMENT made and entered into this_____ day of _____, 19 ___by and

between _____

_____ hereinafter referred to as the "Composers" and

_____ hereinafter referred to as the "Publisher"

WHEREAS, the Composers have written and composed a new and original musical composition entitled:

_____ hereinafter referred to as the "musical composition"; and

WHEREAS, the parties mutually desire that the the musical composition be assigned to the Publisher, on the following terms and conditions:

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, in hand paid to each of the undersigned, receipt whereof hereby is mutually acknowledged, it is agreed:

1. The Composers represent that they are the sole author and composer of the music and lyrics constituting the musical composition; that said music and lyrics are their own original work and creation; and that neither said music or lyrics, nor any part thereof, are a copy of any other copyrighted work. The Composers further represent that they have not sold, assigned, leased, licensed or in any other way disposed of or encumbered the rights herein granted to the Publisher and that they have the right to make this agreement.

2. The Composers hereby sell, assign, transfer and set over unto the Publisher, its successors and assigns, the said musical composition (lyrics, music and title) and each and every arrangement thereof, together with the world-wide copyright thereof, and the right to secure copyright therein for the entire world, with all of their right, title and interest, both legal and equitable therein, including but not limited to the sole and exclusive world-wide publications, mechanical, electrical reproducing, transcription and motion picture rights and the right of public performance by radio, television and other means, and all other rights now known or hereafter

De Leroy et Hutter          N° FAX :+41 21 320 54 04          30 MAI  2008 23:44    P1

3. In consideration for and in full payment of the aforesaid sale, the Publisher hereby agrees to pay the following royalties jointly to the Composers with respect to the musical composition:

(a)   5 ¢   per copy for each and every regular piano-forte copy thereof,  5 ¢  per copy for each and every dance orchestration thereof published and sold by and paid for to the Publisher in the United States and Canada.

(b)   Ten (10%) percent of the wholesale selling price upon each and every printed copy of each and every other arrangement and edition thereof published and sold by and paid for to the Publisher in the United States and Canada, except that, in the event that the said work shall be used or caused to be used in whole or in part in conjunction with one or more other musical compositions in a folio or album, the Composers shall be entitled to receive that proportion of said ten (10%) percent which the musical composition shall bear to the total number of musical compositions contained in such folio or album.

(c)   Fifty (50%) percent of any and all net sums actually received by the Publisher from the mechanical rights, electrical transcription and reproducing rights, motion picture synchronization and television rights and all other rights (excepting public performing rights) therein, including the use thereof in song lyric folios, magazines or other special editions sold by licensees of the Publisher in the United States and Canada.

(d)   The Writer shall receive his public performance royalties throughout the world directly from his own affiliated performing rights society and shall have no claim whatsoever against the Publisher for any royalties received by the Publisher as a distribution from any performing rights society which makes payment directly to writers, authors and/or composers.

(e)   Fifty (50%) percent of any and all net sums actually received by the Publisher from sales and uses of the musical composition in countries outside of the United States and Canada.

(f)   The Publisher shall not be required to pay any royalties on professional or complimentary copies or any copies which are distributed gratuitously to performing artists or orchestra leaders or for advertising or exploitation purposes.

4.   Whenever the term "Composer" is used herein, it shall be deemed to mean all of the persons named hereinbelow, and any and all royalties herein provided to be paid to the Composer shall be paid jointly to the following persons if there be more than one, and shall be divided among them as follows:

| Name | Share |
|------|-------|
|      |       |
|      |       |
|      |       |
|      |       |

Exhibit A

22.

DE :Leroy et Hutter                  N° FAX :+41 21 320 54 04              30 MAI  2008 23:45   P2

23.

5. The Publisher agrees that within forty-five (45) days after the last days of June and December in each year, it will prepare and furnish statements to the Composers hereunder, and each such statement shall be accompanied by a check or checks in payment of any and all sums shown to be due thereby.

6. The Composers hereby authorize and empower the Publisher to reserve, pursuant to law, for and in the name of the Composers, if living, the copyright of the said musical composition, and to execute and deliver in the name of the Composers a formal assignment of each renewal copyright to the Publisher, for its own use and benefit subject to the payment of the same royalties as hereinbefore provided.

7. Any legal action brought by the Publisher against any alleged infringer of said compositions shall be initiated and prosecuted at its sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to Fifty (50%) percent shall be paid to the Composers.

   (a) If a claim is presented against the Publisher alleging that the said composition is an infringement upon some other composition, and because thereof the Publisher is jeopardized, it shall thereupon serve written notice upon the Composers, containing the full details of such claim and Composers hereunder in escrow to any bank or trust company to be held pending the outcome of such claim; provided, however, if no suit be filed within twelve months after written notice to the Composers by the Publisher of the adverse claim, the said bank or trust company shall release and pay to the Composers all sums held in escrow, plus any interest which may have been earned thereupon, but less reasonable counsel fees incurred by the Publisher in dismissing the claim. Such payment shall be without prejudice to the rights of Publisher in event of a subsequent adverse adjudication.

   (b) From and after the service of a summons in a suit for infringement filed against Publisher in respect of said composition, all payments hereunder thereafter coming due to the Composers, shall be paid by the Publisher in trust to any bank or trust company until the suit has been finally adjudicated and there be disbursed accordingly, unless the Composers shall elect to file an acceptable bond in the sum of such payments, in which event the sums due shall be paid to the Composers. The Composers agree to reimburse the Publisher for reasonable counsel fees incurred by the Publisher in defending the suit.

8. The Composers hereby consent to the assignment of this contract or the said composition, or the copyright thereof, or any and all of the rights therein by the Publisher to any person, firm or corporation whatsoever, subject, however, to the payment of the royalties herein specified.

   IN WITNESS WHEREOF, the Composers have hereunto set their hands and seals and the Publisher has caused these presents to be signed by its duly authorized officer the day and year first above written.

_____  L.S.

_____  L.S.

Exhibit 5, Page 55

24.

L.S.

L.S.

By

RYERSON MUSIC PUBLISHERS, INC.

EXHIBIT 6



Print

Subject: **RE: Jean-Jacques Perrey, et al. v. Televisa, et al.**
From: **Ruga, Dylan <druga@steptoe.com>**
Sent: **Friday, September 11, 2009 9:59:57 AM**
To: jlgoldenesq@verizon.net
CC: scontopu@Sidley.com, skim@steptoe.com, csteinbaum@sidley.com

Thanks for sending the complaint and waiver -- I will look for them in today's mail.

While I agree that the parties' respective positions have been ventilated ad naseum, Univision and Galavision would like to begin the discovery process.  In order to do so, however, we need to have our Rule 26 meeting.  This needn't take long (5-10 minutes), but it's a formality we'd like to comply with.  There's going to need to more than one Rule 26 meeting in any event because it will take a while to serve Televisa.  For these reasons, I reiterate my request on behalf of Univision and Galavision to have the Rule 26 meeting as soon as possible.

Thanks.
Dylan

---

**From:** Joseph L. Golden, Esq. [mailto:jlgoldenesq@verizon.net]
**Sent:** Friday, September 11, 2009 9:54 AM
**To:** Ruga, Dylan
**Cc:** scontopu@Sidley.com
**Subject:** Re: Jean-Jacques Perrey, et al. v. Televisa, et al.

Dylan--

I mailed the Rule 4 documents and the complaint to you on September 9. I also mailed sets of the documents to Xenon and Lions Gate at the same time.

I prefer to wait until they have selected counsel before having the Rule 26(f) meeting. I see no reason to have more than one meeting with counsel for those four defendants, but if you have a cogent reason for wanting to do it differently, please let me know. Its not like our respective clients' claims and defenses have not been fully ventilated during the two mediations.

Regards

Joe

Joseph L. Golden, Esq.
Law Office of Joseph L. Golden
1801 Century Park East, 24th Floor
Los Angeles, California 90067-2302
Tel.: 310-556-9666
Fax.: 310-556-9625

This communication constitutes and electronic communication. Its disclosure is strictly limited to the addressees, who are the only intended recipients. This communication may contain confidential and privileged material intended for the sole use of the addresse(s), and its receipt by anyone else is not intended to be a waiver of the confidential or privileged nature of this communication. Any review by or distribution to others is strictly prohibited. If you are not listed as an addressee of this email, please contact us by return electronic mail and delete all copies of this communication. Thank you.

On Sep 11, 2009, **Ruga, Dylan <druga@steptoe.com>** wrote:

Exhibit 6, Page 57

Joe,

The purpose of this email is to schedule the Rule 26(f) early meeting of counsel on behalf of Univision and Galavision. We are available today or Monday-Wednesday next week.  Please let us know when you are available.

I have copied Steve Contopulos on this email who may be representing Xenon and Lion's Gate.  Steve, if you representing these entities, please let us know if you are available to participate in the early meeting of counsel.

Thanks, and please forward me the Rule 4 waiver of service for Univision and Galavision at your earliest convenience.

Dylan Ruga
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
p: 310-734-3228
f:  310-734-3229
druga@steptoe.com

**Internal Revenue Service Circular 230 Disclosure:**
As provided for in Treasury regulations, advice (if any) relating to federal taxes that is contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any plan or arrangement addressed herein.

The information contained in this e-mail message is intended only for the use of the individual or entity to which it is addressed.  It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law.  If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited.  If you think you have received this e-mail message in error, please call 310-734-3228 and/or notify the e-mail sender at "druga@steptoe.com" and destroy all copies of this email.

Exhibit 6, Page 58