1  STEPTOE & JOHNSON LLP
   Seong Kim (SBN 166604)
2  Dylan Ruga (SBN 235969)
   2121 Avenue of the Stars, Suite 2800
3  Los Angeles, California 90067-5052
   Telephone:   (310) 734-3200
4  Facsimile:(310) 734-3300
   Email:     skim@steptoe.com
5  Email:     druga@steptoe.com
6
   Attorneys for Univision Communications Inc.,
7  and Galavision, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 JEAN-JACQUES PERREY, et al.,          Case No.:  CV09-6508 FMC (RZx)

12         Plaintiffs,                   **DEFENDANT UNIVISION
                                         COMMUNICATIONS INC.'S
13     vs.                               NOTICE OF EX PARTE
                                         APPLICATION AND EX PARTE
14 TELEVISA, S.A. DE C.V., et al.,       APPLICATION TO COMPEL
                                         DOCUMENTS; REQUEST FOR
15         Defendants.                   SANCTIONS**

16                                       **[Declaration of Dylan Ruga filed,
                                         and [Proposed] Order lodged,
17                                       herewith]**

18                                       DISCOVERY MATTER

19
                                         Date:  N/A
20                                       Time: N/A
                                         Place: N/A
21
                                         Complaint filed:    September 8, 2009
22                                       Pretrial Conference:  Not set
                                         Trial Date:          Not set
23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**Please take notice** that defendant Univision Communications Inc. ("UCI") hereby moves the Court, located at Courtroom 540 in the United States District Court for the Central District of California, 255 East Temple Street, Los Angeles, California 90012, before the Honorable Magistrate Judge Ralph Zarefsky, for an <u>ex parte</u> Order, pursuant to L.R. 7-19 and FRCP 26, compelling documents from Plaintiffs and for sanctions.

This motion is made following notice to Plaintiffs' counsel pursuant to L.R. 7-19, which took place on October 23, 2009.  Plaintiffs' counsel indicated that he would oppose the instant application.

A copy of this Ex Parte Application has been sent via facsimile to Plaintiff's counsel at the following address:

Joseph L. Golden, Esq.
Law Offices of Joseph L. Golden
1801 Century Park East, 24th Floor
Los Angeles, California 90067
Phone: (310) 556-9666
Fax:   (310) 556-9625

(Ruga Decl., ¶ 2, Ex. A.)

///

///

///

1

1        This application is based upon this Notice, the Memorandum of Points and

2  Authorities, the [PROPOSED] Order submitted herewith, the Declaration of Dylan

3  Ruga and exhibits thereto, the pleadings, files and records in this case and such

4  further evidence and oral argument as may be presented by UCI prior to or at the

5  hearing on this application.

6

7  Dated:  October 26, 2009       STEPTOE & JOHNSON LLP

8

9

10                  By:___/s/ Dylan Ruga_____

11                       DYLAN RUGA

12                  Attorneys for Univision Communications, Inc., and Galavision, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>Table of Contents</u>**

**Page**

I.   Introduction ....................................................................................1

II.  Factual Background..........................................................................1

III. Discussion.........................................................................................5

    A.   The Documents at Issue are Relevant ....................................5

        1.   The Documents are Relevant to Univision's
            Affirmative Defenses.................................................5

        2.   The Documents are Relevant to Rebut Plaintiffs'
            Damages Claim...........................................................7

    B.   Plaintiffs' Privilege Assertions Lack Merit .........................8

        1.   None of the Documents is Protected by the
            Attorney-Client Privilege.........................................8

        2.   The Work Product Doctrine Does Not Apply to
            Categories 13(h), 13(j), 22(h), or 22(j)....................9

        3.   Any Applicable Work Protect Protection Was
            Waived Because the Documents Were Exchanged
            Between Parties with Adverse Interests ...................11

    C.   Plaintiffs Should be Sanctioned Under FRCP 37(a)(5) .....13

IV. Conclusion ......................................................................................13

# Table of Authorities

**Page(s)**

CASES

*A & M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ..........................................................................5

*Admiral Ins. Co. v. U.S. Dist. Court*,
    881 F.2d 1486 (9th Cir. 1989) ........................................................................11

*Baxter Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*,
    2008 WL 5214330 (N.D. Cal., Dec. 12, 2008) ..............................................10

*Bozzuto v. Cox, Castle & Nicholson, LLP*,
    255 F.R.D. 673 (C.D. Cal. 2009) ...............................................................10, 11

*Carmichael Lodge No. 2103 v. Leonard*,
    2009 WL 2985476 (E.D. Cal., Sept. 16, 2009)................................................5

*Coleman v. Schwazenegger*,
    2008 WL 4415324 (N.D. Cal., Sept. 25, 2008) .............................................13

*Cortner v. Israel*,
    732 F.2d 267 (2d Cir. 1984)..............................................................................6

*Dam Things from Denmark v. Russ Berrie & Co., Inc.*,
    290 F.3d 548 (3d Cir. 2002)..............................................................................5

*DeCarlo v. Archie Comic Pubs., Inc.*,
    127 F. Supp. 2d 497 (S.D.N.Y. 2001).............................................................7

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
    2007 WL 4287335 (N.D. Cal., Dec. 7, 2007).................................................10

*DeTarr v. Texaco, Inc.*,
    267 Cal. App. 2d 872 (1968) ............................................................................6

*First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.*,
    163 F.R.D. 574 (N.D. Cal. 1995)....................................................................12

*Fisher v. U.S.*,
    425 U.S. 391 (1976)...........................................................................................8

*Granger v. Gill Abstract Corp.*,
    566 F. Supp. 2d 323 (S.D.N.Y. 2008)..............................................................7

*Griffith v. Davis*
    161 F.R.D. 687 (C.D. Cal. 1995) ....................................................................10

ii

*Hampton v. Paramount Pictures Corp.,*
   279 F.2d 100 (9th Cir. 1960) ........................................................................5

*In re Grand Jury Investigation,*
   974 F.2d 1068 (9th Cir. 1992) ................................................................9, 10

*In re Grand Jury Subpoena,*
   357 F.3d 900 (9th Cir. 2004) ....................................................................10

*In re McKesson HBOC, Inc. Secs. Litig.,*
   2005 WL 934331 (N.D. Cal., March 31, 2005)..............................12, 13

*In re Syncor Erisa Litig.,*
   229 F.R.D. 636 (C.D. Cal. 2005) ............................................................13

*Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.,*
   805 F.2d 120 (3d Cir. 1986)....................................................................12

*McCaugherty v. Sifferman,*
   132 F.R.D. 234 (N.D. Cal. 1990)..............................................................9

*Nidec Corp. v. Victor Co. of Japan,*
   249 F.R.D. 575 (N.D. Cal. 2007)............................................................12

*Polar Bear Prods., Inc. v. Timex Corp.,*
   384 F.3d 700 (9th Cir. 2004) ....................................................................7

*Propet USA, Inc. V. Shugart,*
   2007 WL 2766718 (W.D. Wash., Sept. 19, 2007)....................................8

*Quiksilver, Inc. v. Kymsta Corp.,*
   247 F.R.D. 579 (C.D. Cal. 2007) ..............................................................9

*Stuff v. E.C. Publications, Inc.,*
   342 F.2d 143 (2d Cir. 1965).......................................................................7

*United States v. Bergonzi,*
   216 F.R.D. 487 (N.D. Cal. 2003)......................................................12, 13

*United States v. Massachusetts Inst. of Tech.,*
   128 F.3d 681 (1st Cir. 1997).....................................................................12

*Upjohn Co. v. U.S.,*
   449 U.S. 383 (1981)...................................................................................8

*Veeck v. Southern Bldg. Code Congress Int'l, Inc.,*
   241 F.3d 398 (5th Cir. 2001) ....................................................................6

iii

**STATUTES**

17 U.S.C. § 504(b) .................................................................................................7

**RULES**

Fed. R. Civ. P. 26(b)(5).........................................................................................9

Fed. R. Civ. P. 37(a)(5).........................................................................................13

**BOOKS AND ARTICLES**

3 Nimmer on Copyrights § 12.02[C] .....................................................................6

4 Nimmer on Copyrights § 13.06 ..........................................................................5

4 Nimmer on Copyrights § 13.07 ..........................................................................5

DEFENDANT UNIVISION COMMUNICATION, INC.'S
NOTICE OF EX PARTE APPLICATION TO COMPEL DOCUMENTS
Doc. # CC-214650

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This *ex parte* application is necessitated by Plaintiffs' remarkable position that highly-relevant documents created and exchanged between two **non-attorneys with adverse interests** somehow are protected by the attorney-client privilege and/or attorney work product doctrine.[1]

*Ex parte* relief is required because the parties have scheduled three depositions (two of the named plaintiffs and one non-party) in New York and London, England from November 5 to 11, 2009.  (Ruga Decl., ¶¶ 3-5.)  UCI does not have time to file a regularly-noticed motion and will be severely prejudiced if it does not receive the documents at issue until *after* the depositions.  This is particularly true because the non-party deponent, Patricia Leroy, is copied on each of the documents at issue but she lives abroad and may not be able to be compelled to appear for a second deposition if necessary to examine her about the documents. (*Id.*)

Plaintiffs apparently are trying to gain a tactical advantage by asserting baseless privilege objections to delay production of the documents at issue until *after* the depositions.  The Court should not countenance such gamesmanship. Indeed, the Court should sanction Plaintiffs for acting in bad faith and abusing the discovery process.

## II.   FACTUAL BACKGROUND

This is primarily a copyright infringement action brought by individuals who claim to be the "beneficial owners" of certain musical compositions (the "Compositions").  The Compositions were created in the 1960's and the

---

[1] Many of the arguments contained in the instant *ex parte* application are similar to the arguments made in the Joint Stipulation re Plaintiffs' Motion to Modify a Subpoena Propounded on Universal-Polygram International Publishing, Inc., which currently is pending before the Court. *See* Dkt. No. 19.  The difference is that this application deals with documents created and exchanged between *non-lawyers*, whereas Plaintiffs' counsel was copied on each of the documents at issue in the Joint Stipulation.

1

1    infringement described in the Complaint allegedly has occurred since the 1970's.

2    The defenses of statute of limitations, laches, waiver, estoppel, copyright

3    abandonment and others therefore are at the heart of this dispute.

4        It is undisputed that non-party Universal Polygram International Publishing

5    ("UPIP") owns the legal title in the copyrights for the Compositions.  It also is

6    undisputed that UPIP has known of the alleged infringement since 2005 but has

7    made a conscious decision not to sue UCI or the other defendants.  Defendants

8    maintain that Plaintiffs' claims are barred by UPIP's delay, waiver and

9    acquiescence in the alleged wrongdoing.  Plaintiffs, however, disagree and assert

10    that they may maintain the instant action even if UPIP is barred.

11        On September 15, 2009, UCI propounded its first set of requests for

12    documents on plaintiff Jean-Jacques Perrey ("Perrey").  UCI included the

13    following requests:

14        •     Request No. 5 asks for: "All DOCUMENTS that evidence,

15    reflect or refer to COMMUNICATIONS between YOU[2] and UMG[3] related to

16    alleged infringement of the COMPOSITIONS."  (Ruga Decl., ¶ 6, Ex. B.)

17        •     Request No. 15 asks for: "All DOCUMENTS that refer to both:

18    (1) TELEVISA and (2) any of the COMPOSITIONS.  (*Id.*)

19        •     Request No. 17 asks for: "All DOCUMENTS (including but

20    not limited to emails) that evidence, reflect or refer to YOUR discovery of the

21    alleged infringement described in the COMPLAINT."  (*Id.*)

22        Perrey objected to each of the foregoing requests on the grounds that they

23    seek documents protected by the attorney-client privilege and/or the attorney work

24    product doctrine.  (Ruga Decl., ¶ 7, Ex. C.)  Perrey then produced a privilege log

25    that contains the following entries, among others:

26

27    [2] The term "YOU" is defined as Perrey "and any other persons or entities acting on behalf of PERREY, including but not limited to [his daughter] Patricia Leroy."  (Ruga Decl., ¶ 6, Ex. B.)

28    [3] The term "UMG" is defined as "Universal Music Group and all related entities, including but not limited to Universal-Polygram International Publishing, Inc.")  (*Id.*)

| Doc No. | Description | Author(s) | Addressee(s) | Subject | Priv. |
|---------|-------------|-----------|--------------|---------|-------|
| 12(a) | 8/8/06 email | Ed Arrow | Patricia Leroy cc: Leroy Perrey (Jean-Jacques Perrey) | Claim against Televisa | A/C |
| 12(b) | 8/9/06 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 13(a) | 10/25/06 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C |
| 13(b) | 10/26/06 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 13(c) | 2/24/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 13(d) | 2/28/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C |
| 13(e) | 3/27/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 13(f) | 3/27/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C |
| 13(g) | 10/6/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 13(h) | 10/9/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C, W/P |
| 13(i) | 10/8/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 13(j) | 10/9/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C, W/P |

3

| Doc No. | Description | Author(s) | Addressee(s) | Subject | Priv. |
|---------|-------------|-----------|--------------|---------|-------|
| 22(a) | 10/25/06 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C |
| 22(b) | 10/26/06 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 22(c) | 2/24/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 22(d) | 2/28/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C |
| 22(e) | 3/27/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 22(f) | 3/27/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C |
| 22(g) | 10/6/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 22(h) | 10/9/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C, W/P |
| 22(i) | 10/8/07 email | Patricia Leroy | Ed Arrow | Claim against Televisa | A/C |
| 22(j) | 10/9/07 email | Ed Arrow | Patricia Leroy | Claim against Televisa | A/C, W/P |

(Ruga Decl., ¶ 8, Ex. D.)

Plaintiffs' privilege log indicates that neither Ms. Leroy nor Mr. Arrow are attorneys.  (Ruga Decl., ¶ 8, Ex. D at p. 1.)  Nevertheless, Plaintiffs' counsel takes the untenable position that *each* of the foregoing documents is protected by the attorney-client privilege, and *some* are further protected by the attorney work-product doctrine.  (Ruga Decl., ¶ 8, Ex. D.)

4

III.   **DISCUSSION**

    A.   **The Documents at Issue are Relevant**

      The documents at issue are relevant to UCI's affirmative defenses, as well as to the defendants' ability to rebut Plaintiffs' damages claim.

        1.   The Documents are Relevant to Univision's Affirmative Defenses

      Although Univision has not yet filed a responsive pleading in this action, it will assert the affirmative defenses of, among others, estoppel, copyright abandonment and waiver.  Each of these is a valid defense to a copyright infringement claim.  *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (estoppel and abandonment); *A & M Records, Inc.  v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (waiver and abandonment).

      A waiver or abandonment of copyright occurs if "there is an intent by the copyright proprietor to surrender rights in his work."  *Napster*, 239 F.3d at 1026; 4 Nimmer on Copyright § 13.06; *Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 560 (3d Cir. 2002) (explaining that copyright abandonment may be found where there is "either an act, or a failure to act, from which [the court] can readily infer an intent to abandon" the copyright).

      Estoppel requires proof of the following four elements: (1) the plaintiff must know the facts; (2) the plaintiff must intend that his conduct shall be acted on or must so act that the defendants have a right to believe it is so intended; (3) the defendants must be ignorant of the true facts; and (4) the defendants must rely on the plaintiff's conduct to his injury.  *Hampton*, 279 F.2d at 104; 4 Nimmer on Copyright § 13.07; *Carmichael Lodge No. 2103 v. Leonard*, 2009 WL 2985476, at **14-15 (E.D. Cal., Sept. 16, 2009) ("Equitable estoppel is a defense to copyright infringement actions. . . .  This form of estoppel is a defense in which plaintiff's past conduct bars the plaintiff from asserting certain rights.").

5

1    Univision will argue that UPIP (the legal rights holder) and thus Plaintiffs

2  (the equitable rights holders) are barred by waiver, abandonment and estoppel as a

3  result of UPIP's failure to enforce the copyrights at issue.  The relationship

4  between a publisher and composer is the same as a relationship between a trustee

5  and beneficiary.  *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("When a

6  composer assigns copyright title to a publisher in exchange for the payment of

7  royalties, *an equitable trust relationship is established* between the two parties

8  which gives the composer standing to sue for infringement of that copyright.

9  Otherwise the beneficial owner's interest in the copyright could be diluted or

10  lessened by a wrongdoer's infringement.") (emphasis added) (citations omitted);

11  *see also* 3 Nimmer on Copyright § 12.02[C] at 12-57 (with regard to "[w]ho

12  constitutes the 'beneficial' owner of a copyright" under § 501(b), "[p]resumably,

13  reference is intended to the general law of trusts.").

14    If the trustee/publisher is barred from pursuing a claim, then the

15  beneficiaries/composers are barred as well.  *See, e.g.* Restatement (Second) of

16  Trusts § 327 ("[I]f the trustee is barred by the Statute of Limitations or by laches

17  from maintaining an action against a third person with respect to the trust property,

18  the beneficiary is precluded from maintaining an action against the third person.");

19  *DeTarr v. Texaco, Inc.*, 267 Cal. App. 2d 872, 874 (1968) ("[W]hen the trustee is

20  not in collusion with the wrongdoer, the trustee's delay also bars the

21  beneficiaries.").

22    The documents at issue are relevant to Univision's affirmative defenses

23  because they will demonstrate that UPIP continued to sit by idly and did nothing to

24  enforce the copyrights *even after Ms. Leroy (the daughter and admitted agent of*

25  *plaintiff Jean-Jacques Perrey) contacted UPIP and discussed the claims against*

26  *Televisa and the other defendants at length.*  UPIP's inaction during this period

27  directly supports Univision's defenses of waiver, estoppel and copyright

28  abandonment.  *See Veeck v. Southern Bldg. Code Congress Int'l, Inc.*, 241 F.3d

6

1  398, 409 (5th Cir. 2001) ("A right such as copyright may be waived by inaction.");

2  *DeCarlo v. Archie Comic Pubs., Inc.*, 127 F. Supp. 2d 497, 510 (S.D.N.Y. 2001)

3  (finding that estoppel barred the plaintiff's copyright infringement claim because,

4  among other things, the plaintiff remained silent after learning of the alleged

5  infringement); *Stuff v. E.C. Publications, Inc.*, 342 F.2d 143, 144-45 (2d Cir. 1965)

6  (finding copyright abandonment where the "plaintiff's husband had been most

7  derelict in preventing others from infringing his copyright").

8       Furthermore, the documents at issue will demonstrate that UPIP actively

9  chose to waive its claims against the Defendants.  According to a document

10  recently produced by Plaintiffs, UPIP apparently advised one of the plaintiffs "that

11  it did not intend to pursue any claims against the defendants in this action on

12  account of the unauthorized uses of the compositions."  (Ruga Decl., ¶ 9, Ex. E.)

13  If true, this would amount to **an affirmative waiver by UPIP (the legal rights**

14  **holder) of the claims asserted in the Complaint.**  This waiver will be imputed to

15  Plaintiffs (the equitable rights holders) and bar them as well.

16       It follows that the documents at issue are relevant to Univision's affirmative

17  defenses.

18                    2.    The Documents are Relevant to Rebut Plaintiffs' Damages

19                          Claim

20       The documents at issue also are relevant to rebut Plaintiffs' damages claim.

21  Plaintiffs are seeking, among other things, actual damages under 17 U.S.C. §

22  504(b).  (Ruga Decl., ¶ 10, Ex. F at ¶ 31 ("[P]laintiffs are entitled to an award of

23  their actual damages . . . under 17 U.S.C. § 504(b).")).

24       One measure of a party's actual damages is the amount the party allegedly

25  would have received if the copyright was licensed rather than infringed.  *Polar*

26  *Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708-09 (9th Cir. 2004) (affirming

27  an award of actual damages under 17 U.S.C. § 504(b) that represented lost license

28  fees); *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 330-31 (S.D.N.Y.

7

2008) (same); *Propet USA, Inc. V. Shugart*, 2007 WL 2766718, at *2 (W.D. Wash., Sept. 19, 2007) ("The copyright owner may pursue a lost license fee as actual damages.").

Here, the documents at issue will demonstrate that Plaintiffs' actual damages are *nil* because UPIP (the only entity with the authority to license the compositions at issue) chose not to demand any monies from Univision or the other defendants after learning of the alleged infringements *and* after Ms. Leroy (on behalf of her father, plaintiff Jean-Jacques Perrey) insisted that UPIP take action. Indeed, the documents at issue will demonstrate that UPIP does "not intend to pursue any claims against the defendants in this action on account of the unauthorized uses of the compositions." (Ruga Decl., ¶ 9, Ex. E.) This communication negates any purported "actual damages" suffered by Plaintiffs and Univision is entitled to this evidence to rebut Plaintiffs' damages claim.

**B.   Plaintiffs' Privilege Assertions Lack Merit**

      1.   None of the Documents is Protected by the Attorney-Client Privilege

It is axiomatic that only communications between an *attorney* and *client* are protected by the attorney-client privilege. *See, e.g. Fisher v. U.S.*, 425 U.S. 391, 403 (1976) ("Confidential disclosures made by *a client* to *an attorney* made in order to obtain legal assistance are privileged.") (emphasis added); *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981) ("The lawyer-client privilege rests on the need for the *advocate and counselor* to know all that relates to *the client's* reasons for seeking representation if the professional mission is to be carried out.") (emphasis added).

The purpose of the privilege is "to encourage *clients* to make full disclosure to their *attorneys*." *Upjohn*, 449 U.S. at 389 (emphasis added). Accordingly, the following eight elements must be satisfied for the privilege to attach: "(1) Where legal advice of any kind is sought (2) *from a professional legal adviser in his*

8

*capacity as such*, (3) the communications relating to that purpose, (4) made in confidence (5) *by the client*, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (emphasis added); *Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 582-83 (C.D. Cal. 2007).

Here, each of the documents at issue reflects communications between Patricia Leroy and Ed Arrow.  Ms. Leroy is the daughter of named plaintiff Jean-Jacques Perrey; Mr. Arrow is an executive at Universal Music Publishing Group. (Ruga Decl., ¶ 8, Ex. D at p. 1.)  Neither of these individuals is an attorney.  (*Id.*) Nor is Ms. Leroy a client of Mr. Arrow, or vice-versa.  Ms. Leroy and Mr. Arrow simply are two business people discussing the alleged infringement of the Compositions and potential claims against Televisa.  It follows that these documents cannot be protected by the attorney-client privilege.  *McCaugherty v. Sifferman*, 132 F.R.D. 234, 238 (N.D. Cal. 1990) ("No privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice.").

          2.     <u>The Work Product Doctrine Does Not Apply to Categories</u>
                    <u>13(h), 13(j), 22(h), or 22(j)</u>

Plaintiffs additionally claim work-product protection in the following four (4) documents at issue: 13(h), 13(j), 22(h), and 22(j).  (Ruga Decl., ¶ 8, Ex. D.)[4] Initially, UCI notes that Plaintiffs' privilege log does not satisfy the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure because Plaintiffs have not provided sufficient information to determine whether the work-product doctrine applies to these documents.  Fed. R. Civ. P. 26(b)(5) (stating that a

---

[4] Plaintiffs asserted work product protection *only* in these four documents.  The remaining documents at issue are discoverable because the attorney-client privilege is inapplicable for the reasons set forth above.

9

1  privilege log must contain information sufficient to enable other parties to assess

2  the claim); *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

3  For this reason alone, any purported work-protect protection has been waived.

4  *Baxter Healthcare Corp. v. Fresenius Medical Care Holding, Inc.*, 2008 WL

5  5214330, at *3 (N.D. Cal., Dec. 12, 2008) ("The purpose of a privilege log is to

6  provide the opposing party and the Court with enough information to evaluate the

7  claim of privilege. . . .  Failure to provide sufficient identification waives the

8  privilege."); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL

9  4287335, at *3 (N.D. Cal., Dec. 7, 2007) ("[F]ailure to produce an adequate

10  privilege log can amount to a waiver of the privileges asserted.").

11      Furthermore, the work-product doctrine cannot apply to these four

12  documents because they were not created by a party in anticipation of litigation.  *In*

13  *re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004) (federal work product

14  doctrine only protects "documents and tangible things prepared by a party or his

15  representative in anticipation of litigation.").  Each of these four documents was

16  created by Mr. Arrow, but neither he nor UPIP is a party to this lawsuit.

17      But even if Mr. Arrow and/or UPIP was a party (they clearly are not), there

18  is no basis to conclude that the documents were created in anticipation of litigation.

19  To the contrary, Mr. Arrow apparently told one of the plaintiffs "that [**UPIP does**

20  **not intend to pursue any claims against the defendants in this action on**

21  **account of the unauthorized uses of the compositions.**"  (Ruga Decl., ¶ 9, Ex.

22  E.) (emphasis added).  The communications between UPIP and Ms. Leroy clearly

23  were made in the ordinary course of business (rather than in anticipation of

24  litigation) and the work-product doctrine therefore does not attach.  *Griffith v.*

25  *Davis* 161 F.R.D. 687, 698 (C.D. Cal. 1995) (Wistrich, M.J) ("The work product

26  doctrine does not protect materials assembled in the ordinary course of business.").

27      Of course, Plaintiffs–as the party asserting the work-product protection–have

28  the burden of demonstrating that the immunity applies to these documents.

10

1    *Bozzuto v. Cox, Castle & Nicholson, LLP*, 255 F.R.D. 673, 677 (C.D. Cal. 2009)

2    ("The party claiming work product immunity has the burden of proving the

3    applicability of the doctrine.").  Plaintiffs cannot support their position that

4    documents are protected by the work-product immunity when they are created by a

5    disinterested non-party who has made a deliberate decision not to engage in

6    litigation.  It follows that Plaintiffs cannot satisfy their burden of demonstrating

7    that these documents should be shielded from discovery.

8       But even assuming the documents are protected by the work product

9    immunity (they are not), they still should be produced because there is good cause

10   to compel the production.  *Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486,

11   1494 (9th Cir. 1989) ("[W]hen a party makes a substantial showing that he is

12   unable through his efforts to obtain needed information, the balance of equities

13   shifts in favor of disclosure of trial preparation materials."); *Bozzuto*, 225 F.R.D. at

14   677 ("The work product doctrine establishes a qualified immunity, rather than a

15   privilege, and the qualification of the immunity is to be determined upon a

16   showing of necessity or good cause.").  Indeed, the documents sought may be the

17   *only evidence* of the beneficial owners' demand on UPIP to enforce the copyrights

18   at issue by instituting litigation against Televisa and the other defendants.  As

19   explained above, this evidence is critical to support Defendants' affirmative

20   defenses as well as to rebut Plaintiffs' damages theory.

21       3.    <u>Any Applicable Work Protect Protection Was Waived Because</u>

22              <u>the Documents Were Exchanged Between Parties with Adverse</u>

23              <u>Interests</u>

24       In the *extremely* unlikely event that the Court finds the work-product

25   doctrine applies to the four documents in question, any protection was lost when

26   Mr. Arrow shared the documents with Ms. Perrey because it is undisputed that

27   there is at least a potential conflict between Plaintiffs and UPIP.  (*See* Ruga Decl.,

28   ¶ 11, Ex. G (explaining that "Golden set forth [Plaintiffs'] position vis à vis UPIP

11

1   should it enter into an agreement with Televisa.")).  The law is clear that voluntary

2   disclosure between potential adversaries waives any work product protection.

3   *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.*, 163 F.R.D. 574, 582-83

4   (N.D. Cal. 1995) (holding that voluntary disclosure to a potential adversary is "an

5   act sufficient to waive work product protection.").

6       Plaintiffs' counsel has indicated that he will rely on the "joint defense" or

7   "common interest" privilege[5] in an attempt to shield these documents, but **the joint**

8   **defense privilege does not apply when the parties are actually or potentially**

9   **adverse**.  *In re McKesson HBOC, Inc. Secs. Litig.*, 2005 WL 934331, at * 6 (N.D.

10  Cal., March 31, 2005) ("Disclosure to an actual or potential adversary waives work

11  product protection as to the material disclosed."); *United States v. Bergonzi*, 216

12  F.R.D. 487, 497-98 (N.D. Cal. 2003) (concluding that disclosure a potential

13  adversary waived the work product immunity); *United States v. Massachusetts*

14  *Inst. of Tech.*, 128 F.3d 681, 687 (1st Cir. 1997) ("MIT's disclosure to the audit

15  agency was a disclosure to a potential adversary. . . .  The cases treat this situation

16  as one in which the work product protection is deemed forfeit.").

17      Furthermore, there is *no written joint-defense agreement or other objective*

18  *evidence* that demonstrates Ms. Leroy and Mr. Arrow agreed to keep their

19  communications in confidence and pursue a common interest.  In the absence of

20  any such evidence, Plaintiffs' "common interest" argument must be rejected.

21  *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d

22  Cir. 1986) (rejecting assertion of joint defense privilege because "Bevill produced

23  no evidence that the parties had agreed to pursue a joint defense strategy.").

24      For these reasons, any purported work product in the documents was waived

25  when Mr. Arrow shared them with Ms. Leroy.  Once work product protection is

26

27

28

---

[5] "The joint defense and common interest doctrines are not privileges in and of themselves. Rather, they constitute exceptions to the rule on waiver where communications are disclosed to third parties."  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).

12

1   waived as to one person, it is waived as to all and becomes discoverable by third-

2   parties.  *In re McKesson*, 2005 WL 934331 at *6 ("In general, waiver of work

3   product protection as to one opponent, waives it as to all."); *Bergonzi*, 216 F.R.D.

4   at 498 ("Once a party has disclosed work product to one adversary, it waives work

5   product protection as to all other adversaries."); *In re Syncor Erisa Litig.*, 229

6   F.R.D. 636, 646 (C.D. Cal. 2005) ("[O]nce a party has disclosed work product to

7   an adversary, it has waived work product protection as to all other adversaries.").

8   It follows that Mr. Arrow's disclosure of the documents to Ms. Leroy makes them

9   discoverable by Univision and the other defendants in this case.

10        **C.**    <u>**Plaintiffs Should be Sanctioned Under FRCP 37(a)(5)**</u>

11       Rule 37(a)(5) states that if a discovery motion is granted, the Court "must"

12   issue monetary sanctions in the amount of the movant's attorneys' fees unless the

13   opposing party's objection was "substantially justified."  Fed. R. Civ. P. 37(a)(5).

14       Here, Plaintiffs' privilege assertions are not substantially justified.  As

15   explained above, Plaintiffs simply are attempting to thwart the discovery process

16   and gain a tactical advantage by withholding clearly relevant documents until *after*

17   the upcoming depositions.  It is clear that no privilege applies and Plaintiffs are

18   acting in bad faith.  Plaintiffs must be sanctioned.  *Coleman v. Schwazenegger*,

19   2008 WL 4415324, at *4 (N.D. Cal., Sept. 25, 2008) (issuing sanctions because

20   "defendants were not substantially justified in their non-disclosure of the

21   documents at issue").

22   **IV.**   <u>**CONCLUSION**</u>

23       Plaintiffs are seeking to gain a tactical advantage by withholding relevant

24   documents until after the upcoming depositions.  Simply put, Plaintiffs' argument

25   that the attorney-client privilege applies to documents created and exchanged

26   between two non-lawyers is made in bad faith.  Plaintiffs other argument—that

27   four of the documents at issue also are protected by the attorney work-product

28   doctrine—has been waived because of Plaintiffs' inadequate privilege log and, in

13

1    any event, fails because the documents were not created by a party in anticipation

2    of litigation.  UCI respectfully requests that the Court grant the instant motion,

3    order the production of the documents at issue, and sanction Plaintiffs for their

4    conduct.

5

6

7    Dated:  October 26, 2009                    STEPTOE & JOHNSON LLP

8                                                Seong Kim

9                                                Dylan Ruga

10

11                                               By:___/s/ Dylan Ruga_____

12                                                        DYLAN RUGA

                                                 Attorneys for Univision Communications,

13                                               Inc., and Galavision, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14